CERTIFIED FOR PUBLICATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | ) Case No.: 5:12-CV-02449-EJD |
| Richard A. Garcia, et al., | ) **ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES** |
| Debtors. | ) |
| | ) **[Re: Docket Item No. 1]** |

Appellant United States of America (here, "the IRS" or "Appellant") has timely appealed United States Bankruptcy Judge Arthur S. Weissbrodt's May 2, 2012 order granting Appellees Richard A. and Laura J. Garcia ("the Garcias" or "Appellees") an award of attorney's fees over and above the statutory limit pursuant to 26 U.S.C. § 7430.

Having fully reviewed the parties' papers, the Court AFFIRMS the judgment of the Bankruptcy Court.

**I. Background**

**A. The Garcias' Bankruptcy and the Motion for Attorney's Fees**

On June 20, 2007, the Garcias filed a voluntary Chapter 13 petition. Docket Item No. 1, Ex. 2, Tr. of Hr'g on Debtors' Mot. for Orders Enforcing Sanction ("Order") at 4. The IRS appears

1
Case No.: 5:12-CV-02449-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES

among the Garcias' listed creditors on the relevant schedules and was served with notice of the commencement of their bankruptcy case. Id. at 5. On September 15, 2010, the Garcias received confirmation of their Chapter 13 plan. Id.

Approximately one year later, on September 20, 2011, the IRS recorded a lien for trust fund taxes against Richard Garcia. Id. Counsel for the Garcias, Cathleen Cooper Moran, discussed the pendency of the Garcias' bankruptcy case with an IRS employee in October of 2011. Id. Despite this, the IRS served Richard Garcia's employer with a notice of wage garnishment on October 27, 2011. Id.

The Garcias' filed the motion giving rise to the present appeal on November 29, 2011. Id. That motion requested damages in the amount of $5,000 for each communication or collection action taken in violation of the automatic stay imposed on actions undertaken by the Garcias' listed creditors, as well as an award of attorney's fees incurred to stop such violations. Id. The motion further sought reimbursement for expenses the Garcias accumulated by virtue of the seizure of Richard Garcia's wages. Id.

The Bankruptcy Court held a hearing on that motion on February 13, 2012. Id. At the hearing, Ms. Moran informed the court that, pursuant to her efforts with the IRS, Mr. Garcia's garnished wages had been returned. Id. at 6. She further noted that as of February 12, 2012, the IRS had also lifted the lien on the Garcias' property. Id. The court informed the parties that an award of attorney's fees might be appropriate, and that based on the Bankruptcy Court's knowledge would be unlikely to hold Ms. Moran to amounts the IRS proposed. Id. Accordingly, the Bankruptcy Court instructed Ms. Moran to file a declaration demonstrating the Garcias' actual damages. Id.

Adhering to the Bankruptcy Court's request, Ms. Moran furnished a declaration in support of the motion for attorney's fees detailing her credentials, in addition to the fees incurred in

2
Case No.: 5:12-CV-02449-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES

preparing and litigating the Garcias' motions. Id. In this declaration, Ms. Moran asserted (1) that she had practiced bankruptcy law in the Northern District of California for thirty-two years; (2) that she was one of only one-hundred-eighteen individuals certified by the California State Board of Legal Specialization as a "Specialist in Bankruptcy Law;" and (3) that she teaches bankruptcy law to practitioners. Id. The Bankruptcy Court also reiterated its personal familiarity with Ms. Moran's "level of knowledge and expertise." Id. The declaration also contained copies of billing statements, time records linked to the IRS's post-petition efforts to collect prepetition taxes from the Garcias, and stated Ms. Moran's hourly billing rate of $425 per hour. Id. at 6-7. The IRS offered no evidence rebutting Ms. Moran's credentials. Instead, it characterized the species of legal skills Ms. Moran employed in her interactions with the IRS as those of any competent lawyer. Id. at 10.

### B. The Bankruptcy Court's Determination of the Applicable Law and Findings of Fact

As such, the Bankruptcy Court deemed that a "special factor" existed under Huffman v. Comm'r of Internal Revenue, 987 F.2d 1139 (9th Cir. 1992), justifying an upward departure from the statutory limit imposed on attorney's fees by 26 U.S.C. § 7340. The Bankruptcy Court, citing United States v. Guess, 425 F. Supp. 2d 1143, 1156 (S.D. Cal. 2006), identified a "two-prong test" for determining the existence of such a special factor: whether the attorney in question possesses distinctive knowledge or skills that are needful for the litigation, and cannot be obtained elsewhere at the statutory rate. Order at 10-11. In particular, the Bankruptcy Court likened the Garcias' case to Pirus v. Bowen, 869 F.3d 536 (9th Cir. 1989), in support of the conclusion that specialized knowledge of a complex statutory scheme, such as the Bankruptcy Code, necessary to the vindication of a client's claim, could justify an upward deviation from a statutory cap on awards of attorney's fees. Order at 10. Relevant to the present appeal, the Bankruptcy Court found that Ms. Moran "employ[ed] distinctive knowledge of the Bankruptcy Code to remedy the IRS's violations

of the automatic stay." Order at 11.  Both at the February 13, 2012 hearing and in its May 2, 2012 order, the Bankruptcy Court relied extensively on its personal knowledge and experience, in particular noting that "Ms. Moran's standard fee of $425 per hour for handling bankruptcy matters is very reasonable under these circumstances."  Order at 11.  The present appeal ensued.

## II. Legal Standard

A district court reviews a bankruptcy court's conclusions of law de novo.  See Fed. R. Bankr. P. 8013(a); Huffman, 978 F.2d at 1143 (citing Pierce v. Underwood, 487 U.S. 552, 571 (1988)).  Evidentiary rulings, by contrast, are reviewed for abuse of discretion.  Hughes v. United States, 953 F.2d 531, 539 (9th Cir. 1992).  Similarly, the district court reviews a bankruptcy court's determination of attorney's fees awards under 26 U.S.C. § 7430 for abuse of discretion.  Huffman, 978 F.2d at 1143.  A court abuses its discretion when its decision is based on an erroneous conclusion of law or when the record lacks evidence that could rationally support its decision.  Kali v. Bowen, 854 F.2d 329, 331 (9th Cir. 1988).

## III. Discussion

26 U.S.C. § 7430(c)(1)(B)(iii) places a presumptive limit on attorney's fees in litigation with the IRS.  See id. (capping attorney's fees under the Internal Revenue Code at $125).[1]  Its wording closely tracks that of the Equal Access to Justice Act ("EAJA") and the same broad principles undergird it.  Compare 26 U.S.C. § 7430(c)(1)(B)(iii) with 28 U.S.C. § 2412(d)(2)(A); see also Estate of Merchant v. Comm'r of Internal Revenue, 947 F.2d 1390, 1392-93 (9th Cir. 1991).  As such, courts rely on interpretation of the EAJA when interpreting Section 7430.  Huffman, 978 F.2d at 1143.  Under Section 7430, as under the EAJA, a court of first instance may award attorney's fees in excess of the presumptive statutory limit if a "special factor" exists,

---

[1] Both the Bankruptcy Court and the parties correctly underscore that the $125 per hour statutory cap is subject to cost-of-living adjustment. Presently, this figure is $180 per hour. See 26 U.S.C. § 7430(c)(1)(B)(iii).

4

Case No.: 5:12-CV-02449-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES

United States District Court
For the Northern District of California

justifying such a departure. See 26 U.S.C. § 7430(c)(1)(B)(iii) ("… a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate.").

In construing the language "limited availability of qualified attorneys for such proceeding," the U.S. Supreme Court has determined that this phrase means qualification in "some specialized sense, rather than … general legal competence." Pierce, 487 U.S. at 571 (interpreting the EAJA). The Supreme Court elaborated: "We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." Id. The Ninth Circuit has refined this test, such that a "special factor" exists if the attorney in question possesses distinctive knowledge or skills, that are needful for the litigation, and that cannot be obtained elsewhere at the statutory rate. Pirus, 839 F.2d at 541-42 (finding that knowledge of a complex statutory scheme such as social security laws may qualify as distinctive knowledge or skills); see also Guess, 425 F. Supp. 2d at 1156.

As an initial matter, the Court notes that the IRS does not contest that attorney's fees are owed in the present litigation. Rather, the IRS argues that the Bankruptcy Court erred in departing from the presumptive statutory cap on attorney's fees imposed by Section 7430. The IRS grounds this view in the argument that the Bankruptcy Court wrongly concluded that Ms. Moran's credentials and the nature of the legal representation constitute a "special factor" justifying a higher attorney's fees award. The IRS asserts first that Ms. Moran's credentials as a specialist in bankruptcy law fail to qualify her as possessing distinctive knowledge or skills as a matter of law under Section 7430. The IRS further claims that regardless of Ms. Moran's credentials, any such specialized skill in bankruptcy law was not necessary to vindicate the Garcias' interests because the actions involved were routine. Finally, the IRS notes that the Bankruptcy Court never applied the

5

Case No.: 5:12-CV-02449-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES

third prong of the Pirus test because it made no explicit, separate finding as to the availability of counsel willing to perform the necessary legal work at the statutory rate. The Court addresses each point in turn.

### C. Specialized Skill in Bankruptcy Law Constitutes "Distinctive Knowledge or Specialized Skill"

The IRS vigorously espouses the position that "knowledge of the Bankruptcy Code" cannot satisfy the Pirus test, and cites to various bankruptcy cases in support of this proposition.[2] However, the Court notes that other tribunals have come to the opposite conclusion. See, e.g., In re Ladera Heights Cmty. Hosp., Inc., Nos. CV-94-5647JMI, CV-94-4468JMI, 1995 WL 459297 (C.D. Cal. May 30, 1995) (acknowledging the coupling of tax and bankruptcy law expertise along with the cost of Los Angeles-area legal representation as a special factor); In re Tom Carter Enters., Inc., 159 B.R. 557, 562 (Bankr. C.D. Cal. 1993) (recognizing specialized knowledge or skill in "bankruptcy jurisdiction"). The Court therefore recognizes a divergence in authority as to whether and under what circumstances knowledge of the Bankruptcy Code may constitute "distinctive knowledge or skills" in satisfaction of the first prong of the Pirus test. However, it is the Court's task here to ask whether such a conclusion constitutes an abuse of discretion. Given that reasonable judges in various jurisdictions have come to differing conclusions, the Court cannot say that the Bankruptcy Court made an incorrect conclusion of law by determining that knowledge of the Bankruptcy Code may satisfy the first prong of Pirus.

Moreover, the Court is not convinced of the broad gloss the IRS has given the Bankruptcy Court's characterization of Ms. Moran's knowledge of the Bankruptcy Code. The IRS multiple times in its pleadings appears to refer to mere "knowledge of the Bankruptcy Code." However, the

---

[2] These authorities include In re Headrick, 285 B.R. 540, 547-48 (Bankr. S.D. Ga. 2001); In re Moulton, 195 B.R. 954, 959 (Bankr. M.D. Fla. 1996); In re Kriedle, 145 B.R. 1007, 1020 (Bankr. D. Co. 1992).

6

Case No.: 5:12-CV-02449-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES

Bankruptcy Court referred to Ms. Moran's knowledge of the Bankruptcy Code as "distinctive knowledge" and as "special skill and knowledge of the Bankruptcy Code," and specifically found that vindicating her clients' cause "required more than general legal skill." Order at 10-11. The Bankruptcy Court invoked Pirus and likened distinctive knowledge of the Bankruptcy Code to knowledge of other complex statutory schemes. The Bankruptcy Court also dedicated particular attention to Ms. Moran's experience and expertise, noting that she had practiced bankruptcy law for thirty-two years, that she was one of one-hundred-eighteen individuals statewide certified in bankruptcy law by the California State Board of Legal Specialization, that she taught bankruptcy law to practitioners, and that the "Court [was] personally very familiar with Ms. Moran and her level of knowledge and expertise." Order at 6. Such specialization appears to be precisely the kind of knowledge that warrants a finding of "distinctive knowledge" or "specialized skill." See Ramon-Sepulveda v. INS, 863 1458 (9th Cir. 1988) (noting that a legal specialist would typically possess "distinctive knowledge" or "specialized skill") receded from on other grounds by Sorenson v. Mink, 239 F.3d 1140 (9th Cir. 2001). On this record, there is ample evidence from which the Bankruptcy Court could draw the conclusion that Ms. Moran had "distinctive knowledge" of the Bankruptcy Code. Accordingly, the Bankruptcy Court did not abuse its discretion by determining that Ms. Moran had distinctive legal knowledge and skills in satisfaction of the first prong of Pirus.

### D. Specialized Skill in Bankruptcy Law Was "Needful for the Litigation"

The IRS contends that no specialized knowledge of the Bankruptcy Code was needed in the present litigation, and that this case therefore fails the second prong of Pirus. As such, the IRS describes Ms. Moran's work as "remov[ing] Internal Revenue Service liens on Debtors' property, a routine endeavor." Appellant's Opening Br. at 5. Docket Item No. 5. This, however, is an incomplete depiction of the scope and nature of Ms. Moran's efforts. In specific detail, Ms. Moran worked to remove an IRS lien on the Garcias' real property, and to effect a refund of Mr. Garcia's

7

wages that the IRS had garnished. Order at 13. Further, the removal of this lien and wage garnishment occurred in the context of the violation of the automatic stay on creditor actions against the Garcias, and of the confirmed Chapter 13 plan. Remedying such violations necessarily implicates knowledge of the Bankruptcy Code. The record shows that this process required a number of months to conclude. The IRS offered no reason for the delay, allowing the Bankruptcy Court to determine that "despite the IRS's conclusory statement to the contrary … removing the lien and [returning the] garnished wages required more than general legal skill and that Ms. Moran did, in fact, employ distinctive knowledge of the Bankruptcy Code to remedy the IRS's violations of the automatic stay …." Order at 11. On these facts, the Court cannot say that the "record contains no evidence upon which [the Bankruptcy Court] rationally could have based that decision." Kali, 854 F.2d at 331 (quoting Petition of Hill, 775 F.2d 1037, 1040 (9th Cir. 1985)) (internal quotation marks omitted).

### E. The Record Supports a Finding that Counsel Could not be Obtained Elsewhere at the Statutory Rate

The IRS argues that the Bankruptcy Court either failed to apply or completely ignored the third prong of the Pirus test, namely that qualified counsel could not be obtained elsewhere at the statutory rate. The IRS's point that a court may not simply ignore a legal standard is well taken. However, it does not appear to be the case that the Bankruptcy Court ignored the third prong of the Pirus test. In addition, the record in this case is sparse and contains no evidence that the IRS has previously attempted to put this third prong in issue. As such, the IRS may well have waived this argument. See Hormel v. Helvering, 312 U.S. 552, 555 (1941) ("Ordinarily an appellate court does not give consideration to issues not raised below.")

Nonetheless, the Bankruptcy Court identified a so-called "two-prong test" for determining the existence of such a special factor. This test included that the distinctive knowledge and skills

8
Case No.: 5:12-CV-02449-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES

needful for the litigation could not "be obtained elsewhere at the statutory rate." Order at 10-11. This language is no different from the test the Ninth Circuit laid out in Pirus, and the Bankruptcy Court would not be the first to describe the test in question as a "two-prong test." See, e.g., Guess, 425 F. Supp. 2d at 1156; Garnes v. Barnhardt, No. C-02-4428 VRW, 2006 WL 249522, at *5 (N.D. Cal. Jan. 31, 2006). The Court interprets this statement as subsuming into a finding of "distinctive knowledge needful for the litigation" a finding that such knowledge or skills are unavailable elsewhere at the statutory rate. Buttressing this view are the Bankruptcy Court's own words:

> [T]he Court finds … that Ms. Moran did, in fact, employ distinctive knowledge of the Bankruptcy Code … the Court finds that these circumstances justify an upward deviation from the statutory cap of attorney's fees and that Ms. Moran's standard fee of $425 per hour for handling bankruptcy matters is very reasonable.

Order at 11. As such, the Bankruptcy Court necessarily and implicitly made a finding that such knowledge and skills were, in fact, not available at the statutory rate. Indeed, such blanket statements and findings of fact are typically sufficient to satisfy the abuse of discretion standard in similar cases. See, e.g., In re Ladera Heights Cmty. Hosp., Inc., 1995 WL 459297, at *3 ("Here, Judge Fenning found that the cost of legal services in Los Angeles and the Committee counsel's required expertise of bankruptcy and tax law mandated a higher hourly fee. This decision was within her discretion." (citation omitted)).

Even if this view of the standard is incorrect, the record shows that the Bankruptcy Court had sufficient evidence upon which to draw the conclusion that the skills and knowledge at issue here were not available elsewhere at the statutory rate. Primary among this evidence is the Bankruptcy Court's frequent reliance on its own experience and knowledge, including in the seemingly uncontroverted finding that Ms. Moran's standard fee over the statutory maximum was "very reasonable." Order at 11. The IRS relies on Nadarajah v Holder, 569 F.3d 906 (9th Cir.

9
Case No.: 5:12-CV-02449-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES

2009), Natural Res. Def. Council, Inc. v. Winter, 543 F.3d 1152 (9th Cir. 2008), and Love v. Reilly, 924 F.2d 1492 (9th Cir. 1991), among others, for the proposition that the burden lay upon the Garcias to supply sufficient evidence that appropriate counsel was unavailable elsewhere at the statutory rate. While this statement is true in general terms, this case is individually distinguishable from those the IRS cites. Nadarajah, for instance, involved the sufficiency of a litigant's offer of proof and the government's corresponding failure to sufficiently rebut such offer of proof. 569 F.3d at 915. Here, the parties appear to make neither an explicit offer of proof nor a rebuttal thereof. Winter involved a specific finding by the court of first instance of no evidence that counsel was available at the statutory rate, improperly shifting the burden of proof to the government. 543 F.3d at 1161-62. Here, the Bankruptcy Court makes no similar errant statement of law. Love is most closely on point with the IRS's position. However, there, the Ninth Circuit explained its hesitance thus:

> The affidavit of Mr. Chadsey is the only evidence in the record on this issue. The court made no finding as to whether his statement that there are few other lawyers in Oregon with his expertise in pesticide litigation is sufficient to establish that there were no attorneys willing to take the case for $75 an hour.

Love, 924 F.2d at 1496 n.3. Here, the Bankruptcy Court not only acknowledged the correct test using the language formulation in Pirus (an opinion to which it cited), but also, and in contrast with Love, frequently relied on its own knowledge and experience in order to declare that test satisfied. The Bankruptcy Court explained the first two prongs of Pirus at length; only the third prong implied a reliance on the Bankruptcy Court's knowledge and experience. In light of Ingram v. Oroudjian, 647 F.3d 925 (9th Cir. 2011), the Court deems such reliance for this narrow point

10
Case No.: 5:12-CV-02449-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES

sufficient.[3] Consequently, the record contains evidence on which the Bankruptcy Court "rationally could have based [its] decision." Kali, 854 F.2d at 331.

### IV. Conclusion and Order

For the foregoing reasons, the Court is unable to say that the Bankruptcy Court abused its discretion when it awarded the Appellees attorney's fees in excess of the presumptive statutory maximum set forth in 26 U.S.C. § 7430(c)(1)(B)(iii). Accordingly, the judgment of the Bankruptcy Court is AFFIRMED. The Clerk shall close this file.

**IT IS SO ORDERED**

Dated: September 9, 2013



EDWARD J. DAVILA
United States District Judge

---

[3] The Ingram court held that a court of first instance may rely on its own experience in determining the reasonableness of attorney's fees. Denying the Bankruptcy Court here the opportunity to apply its knowledge and experience to the question of whether qualified counsel would be available at the statutory rate would be incongruous with the holding of Ingram.

11

Case No.: 5:12-CV-02449-EJD
ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES FOR APPELLEES